| ADRIAN SHERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF NORTH CAROLINA | ) |
| AT WILMINGTON; PAUL HOSIER in his | ) |
| official capacity as Provost and Vice | ) |
| Chancellor of the University of North | ) |
| Carolina at Wilmington; RAYMOND | ) |
| BURT in his official capacity as Associate | ) |
| Provost for Academic Affairs of the | ) |
| University of North Carolina at | ) |
| Wilmington; and DAVID CORDLE in his | ) |
| official capacity as Dean of the College of | ) |
| Arts and Sciences at the University of North | ) |
| Carolina at Wilmington, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This employment-related action comes before the court on defendants' motions to dismiss

(DE #8, 9)[1] plaintiff's complaint. Plaintiff opposes the motions. The motions were referred to the

undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B). For the reasons set forth below, it will be recommended that the motions be granted

with respect to all claims except the claim against the individual defendants for violation of federal

due process seeking prospective equitable relief.

---

[1] The docket sheet indicates that DE #8 was filed on behalf of defendants David Cordle, Paul Hosier, and Raymond Burt and that DE #9 was filed on behalf of defendant University of North Carolina at Wilmington. Because both motions seek identical relief and are supported by identical memoranda of law, the court will address the motions jointly.

## BACKGROUND

### Factual Allegations[2]

Plaintiff Adrian Sherman ("plaintiff") was hired as a fully tenured professor of the Psychology Department and the Assistant Provost for International Programs at the University of North Carolina at Wilmington ("UNCW") in July 2005. (Compl. (DE #1) ¶ 8). During the 2007 spring semester, plaintiff and another professor team-taught an environmental psychology class that included a study-abroad trip to Belize with approximately twenty students who were enrolled in the class. (*Id.* ¶ 12).

The trip to Belize was scheduled to last from 10 May until 24 May 2007 (*Id.* ¶ 13). After a two-night stay at a Maya Center where the students stayed with Mayan families, the group traveled to the Monkey River Village, a small Creole village located in Southern Belize. (*Id.* ¶¶ 15, 19-20). On 18 May 2007, the head villager of the Monkey River Village invited plaintiff and the others to a birthday celebration for his son that evening which took place outside of a bar on the beach. (*Id.* ¶¶ 21, 23).

When plaintiff and a female UNCW student arrived at the celebration, approximately thirty male Creole villagers, and no females, were present. (*Id.* ¶ 24). When the female UNCW student began attracting the attention of the male villagers, the former head villager advised plaintiff that if he told them she was his girlfriend or mistress, the men would leave her alone. (*Id.* ¶ 26). Plaintiff mentioned this to the female student who reacted strongly to this suggestion and refused to agree. (*Id.* ¶ 27). Later in the evening, plaintiff approached another female UNCW student who was

---

[2] This summary reflects the principles set out in the Discussion section below that the allegations must be viewed favorably toward plaintiff.

2

dressed provocatively and leaned in to tell her that she was dressed nicely for the occasion and warned her to be careful of the village men who might interpret her appearance in the wrong way. (*Id.* ¶¶ 31, 33). Plaintiff did not intend to make any sexual advance toward this female student, but simply wanted to warn her of the lascivious village men. (*Id.* ¶ 36).

During the celebration, the headman of the village insisted that plaintiff partake in some alcoholic beverages. (*Id.* ¶ 30). Plaintiff accepted the two or three offers of alcoholic beverages extended to him. (*Id.*). Plaintiff did not consider the number of drinks he consumed to be overly excessive in light of his size. (*Id.* ¶ 38). However, after a short time, plaintiff felt intoxicated and began experiencing tunnel vision, ringing in his ears, and an inability to walk straight without assistance. (*Id.* ¶ 39). In hindsight, he suspects that one of the villagers drugged his drinks. (*Id.*).

The next morning, 19 May 2007, plaintiff awoke to find curious bruises on his feet and ankles, despite not feeling any pain as would be typical from a physical impact.[3] (*Id.* ¶ 43). Plaintiff apologized to the other professor and the students for being intoxicated the night before. (*Id.* ¶ 46). Plaintiff and the group continued with that day's scheduled tours as planned. (*Id.* ¶ 47).

The following day, 20 May 2007, plaintiff was approached by the other UNCW professor and the managing director of the Belize Foundation for Research and Environmental Education ("BFREE"). (*Id.* ¶ 49). Plaintiff was informed that one of the female students complained that plaintiff made sexual advances towards her at the birthday celebration. (*Id.*). At the time, plaintiff had no idea which student was involved or what he had done to offend her. (*Id.* ¶¶ 49, 51). The

---

[3] The bruises lasted over three weeks, prompting plaintiff to see a doctor after his return to the United States. (Compl. ¶ 45). The doctor confirmed that it was highly possible that the bruises were caused by ingestion of a foreign substance or drug. (*Id.*).

3

managing director for BFREE strongly suggested that plaintiff leave the program and catch a flight back to the United States, and plaintiff agreed. (*Id.* ¶¶ 53, 54).

Upon plaintiff's return to the United States, he had a voicemail from defendant Paul Hosier ("Hosier"), the Provost and Vice Chancellor of UNCW, asking plaintiff to contact him when plaintiff arrived. (*Id.* ¶ 57). Plaintiff had a meeting with Hosier and defendant Raymond Burt ("Burt"), then-Associate Provost of Academic Affairs, concerning the allegations of sexual advances by plaintiff, but neither identified the student in question or what the specific allegations against plaintiff were. (*Id.* ¶ 61). Plaintiff was candid with defendants about his recollection of what happened and took responsibility for becoming intoxicated. (*Id.* ¶¶ 63, 65). Plaintiff also informed defendants of the incident in which the female student strongly reacted to his suggestion to tell the male villagers that she was with him, although neither Hosier nor Burt gave any indication whether this was the incident from which the allegations against plaintiff arose. (*Id.* ¶¶ 67, 68).

The following day, Burt sent plaintiff an e-mail summarizing their meeting and asked plaintiff to review it for accuracy and completeness. (*Id.* ¶ 72 & Ex. A (DE #1, pp. 23-24)). In addition, by letter dated 22 May 2007, Hosier wrote to plaintiff concerning the issue. (*Id.* ¶ 74 & Ex. B (DE #1, pp. 25-26)). Plaintiff did not receive the letter in the mail until 28 May 2007, but was shown a draft of the letter at a meeting with Burt on 24 May 2007. (*Id.*). The letter indicated that plaintiff would be suspended with pay until further notice pending completion of an investigation (*id.* ¶ 76), and relieved him of his duties as Assistant Provost for International Programs effective immediately (*id.* ¶ 77). At the meeting with Burt, Burt advised plaintiff not to have any further contact with staff or the students on the trip until Hosier had an opportunity to conduct interviews. (*Id.* ¶ 81). Burt also advised plaintiff that he had no future at the University and should consider

4

resigning. (*Id.* ¶ 84). Burt falsely told plaintiff that he could not tell plaintiff the substance of the allegations against him and that if he contested the allegations by requesting a hearing before a faculty committee, it would become a matter of public record. (*Id.* ¶ 86). Burt did not inform plaintiff of his rights to due process during this meeting, nor did Hosier's 22 May 2007 letter. (*Id.* ¶¶ 88, 92).

On or about 28 May 2007, Burt called plaintiff and informed him that the University had received irate emails from the father of the female student whom he had warned about her attire and that plaintiff's suspension had been leaked to the press. (*Id.* ¶¶ 94, 95). Plaintiff alleges that UNCW through its administrators wrongfully informed the news media of details of the situation. (*Id.* ¶ 96). Following the news reports, plaintiff began receiving phone calls and inquiries from friends and relatives. (*Id.* ¶ 98).

In late June 2007, plaintiff met with defendant David Cordle ("Cordle"), then-Dean of the College of Arts and Sciences. (*Id.* ¶ 101). Cordle orally informed plaintiff that he had read the investigation committee's report and would be recommending to Hosier that plaintiff be discharged. (*Id.* ¶ 102). Cordle handed plaintiff a copy of the Code of the Board of Governors of the University of North Carolina ("University Code"), but did not discuss the due process procedures provided for in the University Code. (*Id.* ¶ 104). Feeling pressured, shortly thereafter plaintiff resigned from UNCW. (*Id.* ¶¶ 108, 109).

Weeks later, plaintiff learned the substance of the allegations made by the female student against him. (*Id.* ¶ 112). Specifically, plaintiff learned that the female student alleged that while at the Belizian bar plaintiff approached her from behind, kissed her on the head, and may have attempted to kiss her on the neck. (*Id.*). Upon learning the nature of the charges, by letter dated 20

5

July 2007, plaintiff requested that UNCW return him to active work status, rescind his resignation, and provide him with a written statement of reasons for his dismissal. (*Id.* ¶ 115). In the alternative, plaintiff requested that if UNCW intended to proceed with disciplinary action against him, he be provided with full due process under the law. (*Id.*). By letter dated 31 July 2007, Hosier informed plaintiff that UNCW was declining his request for reinstatement. (*Id.* ¶ 116).

## Case History

Plaintiff filed his complaint in the instant action against UNCW and Hosier, Burt, and Cordle in their official capacities on 10 October 2007. He asserts essentially four claims: (1) violation of his due process rights under the United States Constitution; (2) violation of his due process rights under North Carolina law; (3) invasion of his alleged right to privacy under the United States Constitution; and (4) invasion of his alleged privacy rights under North Carolina law, including section 603 of the University Code. (*Id.* ¶¶ 117-136). The complaint seeks compensatory damages and equitable relief, including plaintiff's reinstatement to the faculty of UNCW, provision of the full due process required, and a directive that UNCW expunge from plaintiff's record all wrongful actions taken by defendants. (*Id.*, prayer for relief, p. 21, ¶¶ 1-3). The complaint also requests attorneys' fees, costs, and disbursements. (*Id.*, p. 21, ¶¶ 4-6).

Defendants filed their motions to dismiss and supporting memoranda (DE #10, 11) on 10 December 2007. Plaintiff subsequently filed a response (DE #12) and defendants filed reply memoranda (DE #13, 14).

6

## DISCUSSION

Defendants' motions, which are brought pursuant to Fed. R. Civ. P. 12(b)(6),[4] seek dismissal of all claims in this action on various grounds. The court will address first defendants' challenge to plaintiff's claims based on the Eleventh Amendment. The court will then address defendant's additional defenses against the two claims it finds are not barred by the Eleventh Amendment.

## 1. RULE 12(b)(6) STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need simply contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, conclusory statements and allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must set out sufficient facts to show that he is entitled to relief, which requires more than generic labels, broad conclusions, or a formulaic recitation of the elements

---

[4] Although defendants purport to rely on Fed. R. Civ. P. 12(b)(1) for a portion of their Eleventh Amendment argument, most of their argument is based on the Rule 12(b)(6) standard for dismissal. The Fourth Circuit has not definitively ruled whether dismissal on Eleventh Amendment grounds should be based on Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim. *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (discussing the Fourth Circuit split in dismissing cases on Eleventh Amendment grounds under both Rule 12(b)(1) and Rule 12(b)(6)); *see also Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment . . . does not automatically destroy original jurisdiction."). However, the Fourth Circuit has instructed, generally, that when a defendant moves for dismissal under both Rules 12(b)(1) and 12(b)(6), "the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Plumer v. State of Md.*, 915 F.2d 927, 932 n.5 (4th Cir. 1990) (*quoting Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985)). On the basis of this principle and to avoid needless complexity, the court believes all the Eleventh Amendment defenses are most appropriately addressed under Rule 12(b)(6). The court would have reached the same result set out in this Memorandum and Recommendation regarding defendants' Eleventh Amendment defenses if it had analyzed them under Rule 12(b)(1).

7

of a cause of action. *Id.* Although the Supreme Court has stated that a complaint should not be dismissed unless there is no set of facts that the plaintiff could prove that would entitle him to relief, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), the *Twombly* Court clarified that this standard should not be taken literally to mean that the court has a duty to "conjure up unpleaded facts." *Twombly*, 127 S. Ct. at 1969 (*quoting O'Brien v. Di Grazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir.), *cert. denied*, 126 S. Ct. 647 (2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. Civil rights complaints are generally entitled to even greater latitude. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (where a dismissal concerns a civil rights complaint, "'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'") (*quoting Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

The court has the discretion to grant a motion to dismiss under Rule 12(b)(6) with or without prejudice. *St. Clair v. Banker Steel Co.*, No. 6:06CV42, 2007 WL 45785, at *3 (W.D. Va. 5 Jan. 2007) (court dismissed plaintiff's complaint without prejudice and granted plaintiff leave to file an amended complaint correcting deficiencies). Ordinarily, where a defect in the complaint is curable,

the court should grant the dismissal without prejudice. *Cloaninger v. McDevitt,* No. 106CV135, 2006 WL 2570586, at \*6-9 (W.D.N.C. 3 Sept. 2006) (court granted motion to dismiss without prejudice and granted plaintiff leave to amend to accurately assert the dismissed claims); *Threat v. Potter,* No. 3:05CV116, 2006 WL 1582393, at \*1 (W.D.N.C. 2 June 2006) ("However, in its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than to order a dismissal at this early stage of the action. The Plaintiff is allowed ten days to amend her Complaint. Depending on the nature of any deficiencies in the Amended Complaint, the Defendant may bring this motion again, if warranted"); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1108 (9th Cir. 2003) ("'[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'") (*quoting Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 701 (9th Cir. 1988)).

A court may not consider matters outside the pleadings without converting a Rule 12(b)(6) motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Norfolk Fed'n of Bus. Dists. v. Dep't of Hous. & Urban Dev.,* 932 F. Supp. 730, 736 (E.D. Va. 1996) ("Federal Rules of Civil Procedure, 12(b)(6) state that if matters outside the pleadings are 'presented to and not excluded by the court' then the motion is to be converted into a motion for summary judgment according to Rule 56."). However, exhibits to the complaint and exhibits to the dismissal motion dealing with facts alleged in the complaint are not considered matters outside the non-moving party's pleadings and may therefore be considered without converting a Rule 12(b)(6) motion. *See, e.g., Pueschel v. United States,* 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted). Under these principles, the court may properly consider the exhibits to the complaint, which are the email from Burt and the

9

letter from Hosier, and the exhibit to defendants' memorandum, Section 603 of the University Code
(DE #11-2).

## II. CLAIMS BARRED BY ELEVENTH AMENDMENT

Defendants assert the Eleventh Amendment as a defense to all of plaintiff's claims. The
court will address the effect of this defense on the claims against UNCW and the individual
defendants in turn.

**A. Claims against UNCW.** The Eleventh Amendment limits the authority of the federal
courts to hear claims against the States. In doing so, it recognizes that the doctrine of sovereign
immunity limited the judicial authority granted in Article III of the United States Constitution.
*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). By its terms, the amendment
addresses only suits against a State by citizens of another state or another country. The amendment
reads: "The Judicial Power of the United States shall not be construed to extend to any suit in law
or equity, commenced or prosecuted against one of the United States by Citizens of another State,
or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, the Supreme
Court has interpreted the sovereign immunity which the Eleventh Amendment recognizes to apply
as well to suits against a State by its own citizens. *Id. (citing Hans v. Louisiana*, 134 U.S. 1, 15
(1890)). A State may waive its sovereign immunity against suit in federal court, but such waiver
must be unequivocally expressed. *Pennhurst*, 465 U.S. at 99. Similarly, while Congress may
abrogate the Eleventh Amendment in legislation under the Fourteenth Amendment, an unequivocal
expression of Congress' intent to do so is required, and no such abrogation is relevant in this case.
*See id.*

10

The limitation effected by sovereign immunity applies to claims against a State regardless of the nature of the relief sought. *Id.* at 100 (*citing Missouri v. Fiske*, 290 U.S. 18, 27 (1933)). The courts have held specifically that the Eleventh Amendment precludes claims against a State and its instrumentalities brought pursuant to § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (§ 1983 does not authorize an action against a state or its entities). Section 1983, of course, permits a plaintiff to assert a direct cause of action against any "person" who under color of law violates rights, privileges, or immunities protected under the United States Constitution. *See, e.g., Hughes v. Bedsole,* 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) ("[plaintiff's] claim under the Fourteenth Amendment merges into her § 1983 claim because § 1983 merely creates a statutory basis to receive a remedy for the deprivation of a constitutional right."). As indicated, both of plaintiff's federal constitutional claims—for violation of due process and invasion of privacy—are brought pursuant to § 1983.

Applying these principles to UNCW shows that all claims against it should be dismissed. Specifically, it is considered an instrumentality of the state of North Carolina, it has not waived its immunity, and all the claims against it are therefore barred by the Eleventh Amendment. *Brown v. Rector & Visitors of the Univ. of Va.*, No. 3:07CV30, 2008 WL 1943956, at *4 (W.D. Va. 2 May 2008) (Eleventh Amendment provides immunity from suit for university, as an instrumentality of the state, and applies to all claims for compensatory, declaratory and injunctive relief); *Googerdy v. N.C. Agric. & Technical St. Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (court granted motion to dismiss § 1983 claim against university on grounds that university was an alter ego of the state and protected from liability under that statute); *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002) (court dismissed § 1983 claims against University of North

11

Carolina). It is therefore recommended that all the claims against UNCW be dismissed with prejudice pursuant to Rule 12(b)(6).

**B. Claims against Individual Defendants.** Eleventh Amendment immunity also bars suits against individual State officials in their official capacity when the suits are deemed to be against the State. *Will*, 491 U.S. at 71; *Pennhurst*, 465 U.S. at 101-02. Such is the case when an individual State official is sued in federal court in his official capacity for money damages based on a federal law claim. *Will*, 491 U.S. at 71. Similarly, suits against State officials based on state law claims, whether they seek damages or equitable relief, are barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 106; *Cusenongle v. Ramos*, 835 F.2d 1486, 1497 (1st Cir. 1987) ("There are two options for a post-*Pennhurst* plaintiff who wishes to bring a claim for injunctive relief against state officials under alternative federal and state theories: either to litigate both federal and state claims in state court or to bifurcate the litigation so that the state claims are heard in state court and the federal claims are heard in federal court."); *Federacion de Maestros de Puerto Rico v. Acevedo-Vila*, 545 F. Supp. 2d 207, 217 n.4 (D.P.R. 2008) ("a Federal Court may not issue any remedy against a state actor in his official capacity, statutory or in equity, based purely on state law, as the Eleventh Amendment bars said action."); *Smolow v. Hafer*, 353 F. Supp. 2d 561, (E.D. Pa. 2005) (same); *Martinez v. Sanders*, No. 02civ5624, 2004 WL 1234041, at *8 (S.D.N.Y. 3 June 2004) (claims premised on state constitutional law could only go forward against state defendants to extent that the claims were asserted against defendants in their individual, and not official, capacities).

There is, however, one relevant exception to the application of the Eleventh Amendment to claims against State officials in their official capacity. When an individual is sued in his official capacity for prospective equitable relief based on an alleged federal constitutional violation, the suit

12

is not deemed to be one against the State, and the Eleventh Amendment does not bar it. *Will*, 491 U.S. at 71 n.10; *Ex parte Young*, 209 U.S. 123, 159-60 (1908). The courts have held specifically that § 1983 actions seeking prospective equitable relief are not barred by the Eleventh Amendment. *E.g.*, *Jennings*, 240 F. Supp. 2d at 498-99 (while claims for money damages against defendants acting in an official capacity are not permissible, claims seeking equitable relief are allowable under § 1983) (*citing Will*, 491 U.S. at 71); *see also Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1544 (6th Cir. 1994) ("The Eleventh Amendment does not bar § 1983 actions brought against state officials in their official capacities seeking prospective injunctive relief."); *Blue v. Ethridge*, 93-262-CIV-5D, 1994 WL 273399, at *6-7 (E.D.N.C. 27 Jan. 1994) (on motion to dismiss, court held that Eleventh Amendment did not bar claims for injunctive relief against individual defendants where plaintiff alleged that she was constructively discharged).

Under the foregoing principles, the only claims against the individual defendants not barred by the Eleventh Amendment are the claims pursuant to § 1983 seeking prospective injunctive relief, including reinstatement and provision of due process as required by law. *See Coakley v. Welch*, 877 F.2d 304, 306 (4th Cir. 1989) (holding that state officials were not immune under the Eleventh Amendment from a claim for the injunctive relief of reinstatement of employment). It is therefore recommended that all the claims against the individual defendants, except for the § 1983 claims for prospective injunctive relief, be dismissed with prejudice pursuant to Rule 12(b)(6), including specifically the claims for compensatory damages.

As indicated, plaintiff asserts two claims against the individual defendants under § 1983, both of which purportedly seek prospective injunctive relief–namely, a claim for violation of procedural due process under the Fourteenth Amendment and a claim for invasion of privacy under the United

13

States Constitution. It is accordingly these two claims which the court has found are not barred by the Eleventh Amendment. Nevertheless, defendants contend that these remaining claims should be dismissed on grounds independent of Eleventh Amendment immunity. The court therefore turns now to defendants' other challenges to these two claims.

## III. FEDERAL PROCEDURAL DUE PROCESS CLAIM AGAINST INDIVIDUAL DEFENDANTS

To establish a federal procedural due process violation, a plaintiff must first show that he has a constitutionally protected property interest or liberty interest and that he was deprived of that interest by state action. *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) (*citing Bd. of Regents v. Roth*, 408 U.S. 564 (1972)). If entitlement to due process protections is established, the question then becomes whether any due process provided was adequate. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d at 173. Defendants contend that plaintiff has not properly pled a claim for the deprivation of any property or liberty interest that is protectable under the Fourteenth Amendment and that his federal due process claim should accordingly be dismissed for failure to state a claim upon which relief can be granted.[5] The court disagrees. The property and liberty interests alleged by plaintiff are discussed in turn below.

---

[5] The due process clause in the North Carolina Constitution provides that the State may not deprive a person of property except by the "law of the land," and claims arising under this clause are analyzed in the same manner as those under the United States Constitution. *See, e.g., Hinton v. Connor*, 336 F. Supp. 2d 297, 311 (M.D.N.C. 2005) (analysis of due process claims under United States and North Carolina Constitutions are identical); *Toomer v. Garrett*, 155 N.C. App. 462, 474, 574 S.E.2d 76, 87 (2002) ("Decisions as to the scope of procedural due process provided by the federal constitution are highly persuasive with respect to that afforded under our state constitution."); *Woods v. City of Wilmington*, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997) ("The 'law of the land' clause of the [North Carolina Constitution] is considered 'synonymous' with the Fourteenth Amendment to the United States Constitution."). Therefore, if the due process claims based on the North Carolina Constitution were deemed not barred by the Eleventh Amendment, the analysis of plaintiff's federal due process claims could be applied to the state due process claims.

14

**A. Property Interest.** To prove a property interest in employment, a plaintiff must prove something more than a unilateral expectation of that interest; he must "have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. As a tenured professor, the parties agree plaintiff had a protected liberty or property interest in continued employment at UNCW. *Univ. of Pittsburgh v. United States*, 507 F.3d 165, (3d Cir. 2007) ("We have recognized that tenured professors at public universities hold a property interest in their tenure, so that procedural due process is necessary when the university seeks to dismiss a tenured professor."); *Gadsden v. Florence Cty. Sch. Dist.*, No. 4:06CV3342, 2008 WL 320196, at *3 (D.S.C. 4 Feb. 2008) ("With regard to public employment, the [Supreme] Court has held that college professors with tenure and public employees under contract have property interests in their continued employment"); (Defs.' Mem., p. 16).

Defendants argue, however, that because plaintiff gave up his position at UNCW of his own free will, he was not deprived by state action of any property interest he may have had in the position by state action but voluntarily waived it and he was therefore not entitled to any constitutional due process protections. *See Stone*, 855 F.2d at 173 ("if [the plaintiff] resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the state deprived him of it within the meaning of the due process clause.). Where a resignation is so involuntary that it amounts to a constructive discharge, however, the resignation can be considered a deprivation of property interests which would trigger the constitutional protections to due process. *Id.*

In order to constitute a constructive discharge or an involuntary resignation, a plaintiff must establish that his employer deliberately made an employee's working conditions so intolerable that he was ultimately compelled to resign. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.

15

1985). Specifically, a public employee's resignation will be considered involuntary where it was obtained by an employer's misrepresentation or deception, or was forced by duress or coercion by the employer. *Young v. Annarino*, 123 F. Supp. 2d 915, 926 (W.D.N.C. 2000).

Here, plaintiff has alleged in his complaint that before any investigation could be conducted he was suspended from his teaching position and stripped of his duties as Assistant Provost for International Programs. (Compl. ¶¶ 76, 77). At that time, he was informed that further disciplinary action, including dismissal, was a potential outcome. (*Id.* ¶ 78). Burt ordered plaintiff to turn in his keys and not to have any contact with staff or students. (*Id.* ¶¶ 80, 81). Plaintiff was advised to cancel a UNCW-sponsored trip to a conference because UNCW would not pay for him to attend as a representative of UNCW (*id.* ¶ 82), but it was suggested that he might want to go on his own behalf "to look for a job" (*id.* ¶ 83). Burt also advised plaintiff that he had "no future at the University" and that he could "stop this whole thing now, if [he] would resign." (*Id.* ¶ 84). In addition, Burt falsely advised plaintiff that if he contested the forthcoming charges by requesting a hearing before a faculty committee it would become a matter of public record. (*Id.* ¶ 86). Thereafter, plaintiff alleges that UNCW, through its administrators, wrongfully informed the news media of the situation. (*Id.* ¶ 96). Finally, following the completion of UNCW's investigation of plaintiff, Cordle informed plaintiff that he would be recommending to Hosier that plaintiff be discharged. (*Id.* ¶ 102). Cordle told plaintiff he could stop the process and make it go away if he would resign. (*Id.* ¶ 107). Feeling pressured, plaintiff believed he had no other option than to resign. (*Id.* ¶ 108).

Defendants strenuously contest whether plaintiff can establish that he was forced into an involuntary resignation. They argue that plaintiff could not have reasonably relied on any of the alleged misrepresentations made by defendants and that plaintiff voluntarily decided to resign rather

16

than face due process proceedings with no coercion from defendants. While defendants may or may not succeed on this argument at summary judgment or at trial, at this stage of the proceedings, the allegations of this civil rights complaint, taken as true, are sufficient to amount to a claim for involuntary resignation or constructive discharge such that plaintiff was entitled to procedural due process protections.

As to the particular protections provided, due process generally requires providing an opportunity to be heard prior to the deprivation of a property interest, or where that is not feasible, post-deprivation processes may also satisfy the due process clause. *Braswell v. Haywood Reg'l Med. Center*, 234 Fed. Appx. 47, 54, 2007 WL 1227464, at *6 (4th Cir. 26 April 2007); *Palotai v. Univ. of Md. at College Park*, 38 Fed. Appx. 946, 951, 2002 WL 1379969, at *4 (4th Cir. 27 June 2002) ("Although there is a preference for pre-deprivation process to protect an individual's property interest, post-deprivation process will suffice in certain situations. Where there is an 'important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted,' the state may be justified in delaying 'the opportunity to be heard until after the initial deprivation.'") (citations omitted). In this instance, plaintiff has alleged that he was not provided an opportunity to be informed of the specific charges against him, contest the charges at a hearing, or offer a defense to the allegations asserted, either before or after the deprivation occurred. He alleges specifically that he was not provided the protections required by section 603 of the University Code. Accordingly, plaintiff has adequately alleged that he was not afforded the federal due process protections to which he was entitled in light of his property interest in continued employment at UNCW.

17

**B. Liberty Interest.** The same conclusion applies to the extent that plaintiff's claim is based on deprivation of a liberty interest. A constitutional right to procedural due process may exist when governmental action threatens a person's liberty interest in his reputation or choice of occupation. *See Roth*, 408 U.S. at 573 (recognizing that notice and hearing would have been required if the State, in declining to rehire the respondent, had "made any charge against him that might seriously damage his standing and associations in the community" or had "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."). However, defamation or injury to reputation, absent an injury to some other right or status previously recognized by state law, does not deprive a plaintiff of any liberty interest protected by the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 709 (1976). Rather, in order to deprive an employee of a liberty interest that would sustain a procedural due process claim, a public employer's stigmatizing remarks must be "made in the course of a discharge or significant demotion." *Stone*, 855 F.2d at 173 n.5; *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006).

Here, plaintiff alleges that in connection with his suspension as a professor and removal as an Assistant Provost for International Programs defendants contacted news media outlets concerning the situation.[6] (Compl. ¶ 96). Plaintiff's photograph and reference to the discipline imposed against him appeared on both television news broadcasts and an internet news website. (*Id.* ¶ 97). Thereafter, plaintiff received telephone calls from friends, relatives, and colleagues from across the country regarding the situation. (*Id.* ¶¶ 98, 99). In addition, Hosier's letter to plaintiff states that

---

[6] It is questionable whether plaintiff also possessed a distinct liberty interest in his position as Assistant Provost for International Programs. Because this is a 12(b)(6) motion and not a motion for summary judgment and there may be facts supporting a liberty interest in the administrative position as well as his professorship, the court will, for purposes of this motion, assume that plaintiff had a liberty interest in maintaining both positions. *See Stringfield v. Graham*, 212 Fed. Appx. 530, at *9 (6th Cir. 2007).

18

plaintiff engaged in misconduct, neglect of duty, incompetence, and irresponsible behavior, and used poor judgment and lacked professionalism. (*Id.* Ex. B, p. 25). While a closer question than presented by plaintiff's property interest, at this stage of the proceedings in this civil rights case, the court cannot exclude the possibility that the alleged actions by defendants rise to the level of a deprivation of plaintiff's liberty interest cognizable under the due process clause.

As to the due process to which plaintiff was entitled, where a liberty interest is at stake and an employer has accused an employee of dishonesty, immorality, criminality, or the like, a party is generally entitled to notice of the allegations and an opportunity to respond in order to remove the stigma upon his reputation. *Stodgill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). As mentioned above, plaintiff has adequately alleged in his complaint that he was never given notice of the specific allegations against him or an opportunity to respond to those allegations to clear his name and, accordingly, he has adequately alleged that he was not provided with the procedural due process to which he was entitled. Therefore, plaintiff's federal due process claim, to the extent that it is based on a liberty deprivation theory, should not be dismissed. The court having already determined that the due process claim based on a property deprivation theory should also not be dismissed, it is recommended that defendants' motions be denied with respect to plaintiff's federal procedural due process claims against the individual defendants for prospective injunctive relief, including reinstatement and provision of due process as required by law.

## IV. FEDERAL INVASION OF PRIVACY CLAIM AGAINST INDIVIDUAL DEFENDANTS

Defendants contend that plaintiff fails to state a claim for invasion of privacy rights under federal constitutional law. The court agrees.

19

"[T]here is no general constitutional right to privacy; rather the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999). None of these matters is implicated in the present case, and plaintiff does not argue otherwise in his memorandum in opposition to the motions to dismiss. Accordingly, it is recommended that plaintiff's federal claim for invasion of privacy be dismissed with prejudice pursuant to Rule 12(b)(6).[7]

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendants' motions to dismiss (DE #8, 9) be GRANTED in part and DENIED in part on the following terms:

---

[7] Because the court has found plaintiff's North Carolina law-based privacy claim to be among those barred by the Eleventh Amendment, the court is not required to address it, but will offer several observations in the event they might be useful in further proceedings on defendants' motions. Although plaintiff's complaint cites the North Carolina Constitution as the basis for his right to privacy claim, in his memorandum opposing the motions to dismiss, he argues that he has stated a claim for the tort of invasion of privacy. Plaintiff may not, however, use his brief in opposition to the dismissal motions to amend his complaint. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 533, 544 n.8 (E.D.N.C. 2008).

In any event, North Carolina recognizes a claim for the tort of invasion of privacy for an intrusion upon the plaintiff's seclusion or solitude or into his private affairs. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 29, 588 S.E.2d 20, 28 (2003). In general, "there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." *Id.* (quoting *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4 (2001)). In order to support such a claim, the alleged conduct must be so egregious as to be "highly offensive to a reasonable person." *Keyzer v. Amerlink, Ltd.*, 173 N.C. App. 284, 288, 618 S.E.2d 768, 771 (2005). Examples of such intrusions recognized as actionable under North Carolina law include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Toomer v. Garrett*, 155 N.C. App. 462, 479-80, 574 S.E.2d 76, 90 (2002).

Here, plaintiff maintains that the unauthorized disclosure of false and misleading statements concerning his tenured employment, suspension, and termination as Assistant Provost without mentioning that the disciplinary actions were taken in violation of the University Code and without affording plaintiff due process constitute violations of plaintiff's right to privacy. The court agrees with defendants that these allegations do not constitute an intrusion upon plaintiff that rises to a level of conduct that would be highly offensive to a reasonable person or that could be considered comparable to the intrusions recognized as viable under North Carolina law. The claims, if not barred by the Eleventh Amendment, would therefore be subject to dismissal. However, because the court is not convinced that there is no set of facts that plaintiff could present to support such a claim, it believes any such dismissal should be without prejudice.

1.     the motions be GRANTED with respect to all claims and all claims be DISMISSED with prejudice pursuant to Rule 12(b)(6), except the § 1983 procedural due process claim against the individual defendants seeking prospective injunctive relief; and

2.     the motions be DENIED with respect to the § 1983 procedural due process claim against the individual defendants seeking prospective injunctive relief.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 12th day of August, 2008.

James E. Gates
United States Magistrate Judge

21